**Alvin W. COHN, Plaintiff,**

v.

**A.E. STALEY MANUFACTURING COMPANY, Defendant.**

No. 89 C 1405.

United States District Court,
N.D. Illinois, E.D.

April 16, 1990.

Richard E. Lieberman, Robert S. Jacobs, Jaffrey P. Chicoine, Ross & Hardies, Chicago, Ill., for plaintiff.

Walter P. Loomis, Jr., Thomas J. Piskorski, Seyfarth Shaw Fairweather & Geraldson, Chicago, Ill., for defendant.

1. In 1988, Staley Continental, Inc. changed its name to A.E. Staley Manufacturing Co., the defendant herein. For purposes of this opinion,

## MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge.

This matter is before the court on defendant's, A.E. Staley Manufacturing Co. (Staley), motion for summary judgment pursuant to FRCP Rule 56. Defendant contends that plaintiff, Alvin W. Cohn (Cohn), failed to file a timely charge of age discrimination with the Equal Employment Opportunity Commission (EEOC) and therefore, plaintiff's action in this court is barred. For the following reasons, defendant's motion is denied.

### FACTS

As of April 1986, plaintiff was employed as the Vice Chairman of CFS Continental, an unincorporated operating division of Staley Continental, Inc.[1]

On April 8, 1986, Cohn and Staley entered into a ten-page "management retention agreement" (Agreement). The Agreement used the age of 65 as a basis for reducing the amount of benefits received by Cohn in the event he was terminated within 36 months of a change of control. The relevant paragraph of the Agreement, paragraph 2, provided:

2. If a Change of Control of Staley occurs and Executive [Cohn] is terminated without Cause or Constructively Terminated from the employ of Staley (or its successor) during the thirty-six (36) months following such Change in Control, then Executive shall be paid and provided each of the following:

A. Within five (5) business days after the date of any such termination of employment, Staley (or its successor) will pay Executive a lump sum cash payment in an amount equal to (i) his accrued vacation pay and (ii) three (3) times his highest annual base salary rate and (iii) three (3) times the amount of his highest annual incentive compensation paid dur-

both of these corporate entities are referred to as "Staley".

ing the five (5) years immediately prior to such Change in Control or termination, whichever is greater. *In the event that there are fewer than thirty-six (36) whole or partial months remaining from the date of Executive's termination to his normal retirement date at age 65, the amounts provided for in subparts (ii) and (iii) of this Paragraph 2A will be reduced* by multiplying them by a fraction, the numerator of which is the number of whole or partial months so remaining to his normal retirement date at age 65 and the denominator of which is 36.

B. *He [Cohn] and his dependents shall continue to be covered until thirty-six (36) months after the date of such termination or until Executive reaches 65 years of age, whichever occurs first,* by all survivor rights and insurance and benefit programs of Staley (or its successor) in type and amount at least equivalent to that provided to him and his dependents by Staley immediately prior to the Change of Control; provided that, if participation in any one or more of such arrangements is not possible under the terms thereof, Staley (or its successor) will provide substantially identical benefits outside the programs. The cost of this coverage will be paid by Staley (or its successor). The coverage hereunder shall be in addition to any coverage to which Executive may become entitled under Staley's post-retirement medical insurance program.

(Emphasis added.)

Based upon the parties' statements of uncontested material facts, Cohn was 64 when the Agreement was signed and turned 65 on August 9, 1986. A change in control, as defined in the Agreement occurred on or about May 8, 1988 when Tate & Lyle PLC acquired Staley.

On August 1, 1988, Sysco Corporation acquired from Staley the CFS Continental business where Cohn was vice chairman. On October 31, 1988, Cohn was terminated from his employment with CFS Continental and/or Sysco. Staley, pursuant to the Agreement, made certain payments to Cohn. Staley, pursuant to the Agreement, did not pay Cohn the benefits set forth in paragraph 2A(ii), 2A(iii) and 2B, because those benefits were reduced to zero because Cohn was over 65 years of age.

On December 7, 1988, Cohn filed a charge of age discrimination against Staley with the Illinois Department of Human Relations and the EEOC, alleging that Staley's denial of the lump sum payments under paragraphs 2A(ii), 2A(iii) and 2B of the Agreement constituted age discrimination.

*Analysis*

The only issue raised in defendant's summary judgment motion is whether plaintiff filed a timely charge of age discrimination with the EEOC under the requirements of the Age Discrimination in Employment Act of 1967 (ADEA). 29 U.S.C.A. § 621 et seq. (West 1985). The ADEA prohibits an employer from discriminating against an individual with respect to his compensation because of such individual's age. 29 U.S.C.A. § 623(a)(1) (West 1985). Both parties agree that Cohn was required to file a charge with the EEOC within 300 days of the alleged act of discrimination. 29 U.S.C.A. § 626(d)(2) (West 1985); *see Vaught v. Donnelley & Sons Co.,* 745 F.2d 407, 410 n. 2 (7th Cir.1984).

Defendant argues that the 300–day limit began to run on April 8, 1986, when the Agreement was entered by Cohn and Staley; or the time began to run on August 9, 1986 when Cohn turned 65. In either event, Cohn failed to file a charge with the EEOC within 300 days of one of these dates. Defendant relies primarily on the Supreme Court's holdings in *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), and *Lorance v. AT & T Technologies, Inc.,* — U.S. ——, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989).

In *Ricks,* the court held that the proper focus in analyzing the running of the charge-filing requirements in discrimination cases is upon the time of the discriminatory acts not the time at which the inevitable consequences occur. *Ricks,* 449 U.S. at 258, 101 S.Ct. at 504. In *Ricks,* the

plaintiff alleged that the college denied him tenure because of his national origin. The college's policy was to give teachers denied a tenure a final one year contract. The court held that the charge-filing period began to run when the plaintiff was notified of his denial of tenure, not when his final one year employment contract expired. *Ricks*, 449 U.S. at 258, 101 S.Ct. at 504. In *Lorance*, the female plaintiffs alleged that a facially neutral seniority system was discriminatory in that it had a differential impact upon women as compared to men. *Lorance*, —— U.S. at ——, 109 S.Ct. at 2265. The Supreme Court in *Lorance*, applying its decision in *Ricks* held that the charge-filing period began to run at the time the new seniority system was adopted, not the time at which the plaintiffs received notice of their demotions which resulted three years after the new seniority system was adopted. *Lorance*, —— U.S. ——, 109 S.Ct. at 2268, 2269.

Defendant is correct that the relevant issue, as explained in *Ricks*, is identification of the alleged unlawful act of discrimination. However, as plaintiff correctly contends, defendant's reliance on *Lorance* is misplaced. *Lorance* involved a facially neutral or non-discriminatory seniority system. The holding in *Lorance*, however, is limited to such facially nondiscriminatory policies. The court in *Lorance* stated, "There is no doubt, of course, that a facially discriminatory seniority system (one that treats similarly situated employees differently) can be challenged at any time ...". *Lorance*, —— U.S. ——, 109 S.Ct. at 2269. A facially discriminatory system by definition discriminates each time it is applied. *Lorance*, —— U.S. ——, 109 S.Ct. at 2269 n. 5; *Kuemmerlin v. Madison Metro. School Dist.*, 894 F.2d 257, 260 (7th Cir.1990).

▋ In the instant case, paragraph 2 of the Agreement is facially discriminatory. Paragraph 2 expressly reduces, based upon age, the benefits Cohn would receive if and when a change of control occurred and Cohn was terminated within 36 months thereof. It was Staley's denial of benefits to Cohn pursuant to the facially discriminatory terms of paragraph 2 which constitut-

ed an alleged act of employment discrimination. It was this denial of benefits on November 1, 1988 which began the 300–day period in which Cohn was required to file charges of age discrimination with the EEOC. Cohn filed his charge well within the 300–day limit on December 7, 1988.

ORDERED: Defendant's motion for summary judgment is denied.