**Robert G. BLACK, Plaintiff,**

v.

**RIETH–RILEY CONSTRUCTION CO., INC., Defendant.**

**No. IP 96–0006 M/S.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 13, 1997.

Robert G. Black, Marion, IN, pro se.

Gerald F. Lutkus, Barnes & Thornburg, South Bend, IN, Michael A. Moffatt, Barnes & Thornburg, Indianapolis, IN, for Defendant.

### *ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT*

McKINNEY, District Judge.

The present matter now pends before this Court on cross motions for summary judgment. Plaintiff Robert G. Black, a *pro se* litigant, has alleged that Defendant Rieth–Riley Construction Co., Inc. ("Rieth–Riley" or "the Company") violated Title VII of the Civil Rights Act of 1964 ("Title VII" or "the Act"). On November 6, 1996, Black filed a motion for summary judgment, and Rieth–Riley responded with its own motion for summary judgment on November 26, 1996. Upon review of the record and the applicable law, this Court now **DENIES** Black's motion and **GRANTS** Rieth–Riley's.

## I. BACKGROUND

At least in principle, the parties have disputed many of the facts pertaining to this matter; however, few of these disputed facts are material for summary judgment purposes. Black first applied for employment with Rieth–Riley on May 30, 1990. The Company hired him June 4 to work as a laborer in the Portable Asphalt Division of the Heavy and Highway Group. In this capacity, Black worked on the construction of U.S. 24 near Peru, Indiana. During his employment with Rieth–Riley, Black received a certain amount of training, although the parties dispute exactly how much.

Toward the end of the U.S. 24 project, foreman Tom Gilbert went looking for Black and found him asleep in the bucket of a piece of heavy equipment. The Company had previously instructed all the laborers not to be in the bucket of the equipment at any time for any purpose. Black was written up for this safety infraction and terminated on November 2, 1990. Black has disputed this explanation, admitting that he was in the bucket but claiming he was not asleep. According to Black, the termination stemmed from discriminatory motives; Rieth–Riley maintains that Black lost his job due to poor performance, including the safety violation. For present purposes, this dispute does not present any genuine factual issues, for any discrimination which occurred in 1990 would fall well beyond the applicable statute of limitations.

The employment applications included as part of the present record verify that Black reapplied for employment with Rieth–Riley in 1993 and 1994. He contends that he also applied in 1991 and 1992, but no records have been submitted to substantiate this assertion. Rieth–Riley kept his job applications on file but did not hire him in any of these years.

Black now contends that Rieth–Riley decided not to hire him based upon his race. In support of this claim, he has submitted the job applications of the individuals the company hired in 1993 and 1994. Although the applications themselves do not indicate the race of the applicants, Black claims that many of these successful applicants were whites who had received less training than he

had. According to Black, the only reason Rieth–Riley would have hired these individuals instead of him is discrimination. Black filed a charge of discrimination with the Indiana Civil Rights Commission ("ICRC") on May 30, 1995, and the Equal Employment Opportunity Commission ("EEOC") issued a right to sue letter on June 1, 1995. Black initiated this litigation in the Northern District of Illinois on July 25, 1995. On January 2, 1996, the matter was transferred to this Court.

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." When the moving party has met the standard of Rule 56, summary judgment is mandatory. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Irrelevant or unnecessary facts do not deter summary judgment even when in dispute. *Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir.1992). "If the non-moving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir.1996).

On certain occasions, the Seventh Circuit had suggested that a court approach a motion for summary judgment in an employment discrimination case with a particular degree of caution. *See, e.g., Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993); *Holland v. Jefferson Nat'l Life Ins.*

*Co.,* 883 F.2d 1307, 1312 (7th Cir.1989). The language implied that summary judgment might be less· appropriate in this context based upon the presence of issues of motive and intent. *Holland,* 883 F.2d at ·1312. However, as the Seventh Circuit has recently emphasized, these cases do not establish a heightened summary judgment standard for employment-related case. *See Wallace v. SMC Pneumatics, Inc.,* 103 F.3d 1394, 1396 (7th Cir.1997). Instead, the language from the prior cases simply means "that courts should be careful in a discrimination case as in any case not to grant summary judgment if there is an issue of material fact that is genuinely contestable, which an issue of intent often though not always will be." *Id.* (emphasis in original). Even when discriminatory intent is at issue, summary judgment is appropriate when the nonmovant presents no evidence to indicate motive or intent in support of her position. *See Holland,* 883 F.2d at 1312. Further, the nonmovant will not defeat summary judgment merely by pointing to self-serving allegations without evidentiary support. *Cliff v. Board of School Comm'rs,* 42 F.3d 403, 408 (7th Cir.1994).

A few additional comments are necessary because the plaintiff in the present case is a *pro se* litigant. By now, it has become "axiomatic" that a court bears "a special responsibility" to· construe a *pro se* litigant's complaint liberally. *Donald v. Cook County Sheriff's Dept.,* 95 F.3d 548, 555 (7th Cir.1996). The Seventh · Circuit recently made the following observations:

> Not only is the district court to view the *pro se* complaint with an understanding eye, but, while the court is not to become an advocate, it is incumbent on it to take appropriate measures to permit the adjudication of *pro se* claims on the merits, rather than to order their dismissal on technical grounds. Indeed, it is the "well-established duty of the trial court to en-sure that the claims of a *pro se* litigant are given a fair and meaningful consideration." *Palmer v. City of Decatur,* 814 F.2d 426, 428–29 (7th Cir.1987) (citations omitted).

*Id.* at 555 (discussing matter from the context of a motion to dismiss). The exact extent to which district courts bear a similar responsibility in considering motions for summary judgment has not been clearly established. On certain occasions, the Seventh Circuit has read summary judgment materials more leniently because of a litigant's *pro se* status. *See,· e.g., Vance v. Peters,* 97 F.3d 987, 993 (7th Cir.1996) (favorably reading *pro se* plaintiff's complaint and summary judgment responses "generously and in the light most favorable to her"); *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir.1995) (reading the plaintiff's complaint and summary judgment responses "more generously, because he was a *pro se* litigant at the time of those proceedings."). However, even though *pro se* litigants do benefit from "various procedural protections," they "are not entitled to a general dispensation from the rules of procedure. . . ." *Jones v. Phipps,* 39 F.3d 158, 163 (7th Cir.1994). Accordingly, this Court shall apply "an understanding eye" to Black's summary judgment materials to ensure that his arguments receive careful analysis—even if they are not phrased in familiar legal terminology. However, Black still bears the affirmative burden of presenting evidence that a disputed issue of material fact exists. *See Matsushita Elec. Indus.,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56. Guided by these standards, this Court shall now consider the present motions for summary judgment.

### *B. THE LIMITATIONS PERIOD*

Rieth–Riley has contended that Black failed to file his discrimination claims within the time period allowed by Title VII. As a general matter, the Act requires that a claimant file a charge with the EEOC within 180 days of an allegedly discriminatory act. 42 U.S.C. § 2000e–5(e)́. "However, if a claimant initially institutes proceedings with a state or local agency that possesses the authority to address the alleged discrimination, the time limit for filing with the EEOC is extended to 300 days." *Russell v. Delco Remy Div.,* 51 F.3d 746, 750 (7th Cir.1995); *see also Doe v. R.R. Donnelley & Sons Co.* 42 F.3d 439, 445 (7th Cir.1994) ("In a deferral state, such as Indiana, a charge must be filed within 300 days of the occurrence of the act that is the basis of the complaint."). In part, this limitations period serves to " 'protect

employers from the burden of defending claims arising from employment decisions that are long past.'" *Mull v. ARCO Durethene Plastics, Inc.,* 784 F.2d 284, 291 (7th Cir.1986) (quoting *Delaware State College v. Ricks,* 449 U.S. 250, 256–57, 101 S.Ct. 498, 503–04, 66 L.Ed.2d 431 (1980)).

▮ In the present case, Black filed his charge with the ICRC on May 30, 1995. The 300–day period would therefore encompass any acts of discrimination which occurred between that date and August 4, 1994. *See Vore v. Indiana Bell Telephone Co.,* 32 F.3d 1161, 1163–63 (7th Cir.1994) (noting that, because the discrimination charge had been filed with the EEOC on June 24, 1992, the court could consider "allegations of discriminatory conduct that transpired between August 29, 1991, and June 24, 1992"). Neither Black's briefs nor his evidentiary materials identify any discriminatory act which occurred within this time period. Plainly, any claim relating to his termination would substantially predate August 4, 1994, as would the Company's failure to hire him in 1991, 1992, or 1993. Black applied for a position with Rieth–Riley in April, 1994, and the Company did not hire him but did hire other individuals during that year. However, Black has not identified any facts suggesting that Rieth–Riley hired anyone after August 4. Moreover, he has not submitted no evidence pertaining to the race of any individual hired after that date. Accordingly, this Court must conclude that Black has failed to present evidence of unlawful discrimination which occurred during the applicable time period. Unless some type of tolling or other theory preserves his claim, it is time-barred.

Understandably, Black does not specifically refer to principles such as equitable modification or the continuing violation theory in his briefs, yet he does make factual arguments pertaining to these theories. According to Black's Request for Summary Judgment, he has previously pursued an action against McClure Oil; Black believed that Rieth–Riley was considering him for employment until Lesley Webber testified about him

at the McClure Oil trial.[1] At that time, Black maintains, he realized he had suffered from unlawful discrimination at the hands of Rieth–Riley.

▮ Courts have recognized two types of equitable modification: " '(1) equitable tolling, which often focuses on the plaintiff's excusable ignorance of the limitations period and on lack or prejudice to the defendant and (2) equitable estoppel, which usually focuses on the actions of the defendant.'" *Mull,* 784 F.2d at 291 (quoting *Naton v. Bank of California,* 649 F.2d 691, 696 (9th Cir.1981) (citations omitted)). Equitable tolling tolls the limitations period until " 'facts that would support a charge of discrimination ... [are] apparent or should [be] apparent to a person with a reasonably prudent regard for his rights similarly situated to the plaintiff.'" *Id.* (brackets in original) (quoting *Vaught v. R.R. Donnelley & Sons Co.,* 745 F.2d 407, 410–11 (7th Cir.1984) (additional internal citation omitted)). Here, Black either knew or should have known when he did not receive a position that the decision might have resulted from discrimination. His failure to investigate further precludes him from claiming that the limitations period tolled equitably.

▮ Turning to the issue of equitable estoppel, this theory only applies where "the employee's otherwise untimely filing was the result 'either of a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge.'" *Id.* at 292 (quoting *Price v. Litton Bus. Sys., Inc.,* 694 F.2d 963, 965 (4th Cir. 1982)). In this regard, courts typically look for evidence of " 'the plaintiff's actual and reasonable reliance on the defendant's conduct or representations" ' or the " 'improper purpose on the part of the defendant's actual or constructive knowledge of the deceptive nature of its conduct." ' *Id.* (quoting *Naton,* 649 F.2d at 696). Black has stated in his briefs and other documents that, when he inquired about the status of his application, he was informed that Rieth–Riley was not presently hiring but his application would be

---

1. Black has designated Weber's testimony in the McClure trial as evidence in support of his present motion, yet neither party has included this testimony in the record. From Black's description, however, it sounds as though Weber testified that Black was a poor employee.

182

considered. He has not identified the specific dates of his inquiries, nor has he indicated when he realized the Company was hiring whites instead of him. As a result, this Court lacks sufficient evidence to determine whether Black actually and reasonably relied upon Rieth–Riley's representations or whether Rieth–Riley had an improper purpose in making those representations. Therefore, equitable estoppel does not apply.

■■■■ Similarly, Black cannot invoke the continuing violation doctrine. This legal principle "allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitations period. For purposes of the limitation period, courts treat such a combination as one continuous act that ends within the limitations period." *Doe*, 42 F.3d at 445. Through this doctrine, the courts have attempted to protect plaintiffs from acts "whose character was not apparent at the time they occurred." *Id.* at 446. However, this doctrine does not assist Black because he has neither identified a discriminatory act which occurred within the applicable period nor supplied facts linking prior acts of discrimination to an act which is not time barred. The continuing violation doctrine does not save Black's claims against Rieth–Riley.

### CONCLUSION

For the reasons set forth above, this Court finds that the 300–day limitations period bars Black from pursuing his claims against Rieth–Riley. Accordingly, this Court now **DENIES** Black's motion for summary judgment and **GRANTS** Rieth–Riley's motion for summary judgment.